## Walters v. Commonwealth.

Oct. 13, 1942.

J. M. Wolfinbarger and John W. Walker for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The grand jury of Estill county at the February, 1940, term of the Estill circuit court indicted the appellant, Garnie Walters, jointly with Sherman Cox for the murder of Anna Isaacs. Prior to the trial at the February, 1942, term of the Estill circuit court, at which appellant was convicted, Sherman Cox had been tried twice and appellant once. Each of these three trials resulted in a hung jury. At appellant's second trial he was convicted of voluntary manslaughter, and his punishment fixed at two years' imprisonment. On this appeal he seeks reversal of the judgment on three grounds: (1) The verdict is not sustained by the evidence; (2) the court erred in giving to the jury the instruction on manslaughter; and (3) improper conduct of the Commonwealth's attorney in his closing argument to the jury.

Anna Isaacs, a 19-year old girl who lived with her parents in Estill county about six miles south of Irvine, Kentucky, disappeared on the night of November 7, 1939. On March 29, 1940, the body of a woman was seen floating in Cow creek near its mouth. Cow creek empties into the Kentucky river near the corporate limits of the towns of Irvine and Ravenna, and near the end of the bridge over the creek is a precipitous cliff about 25 feet high. The body, which was badly decomposed, was removed from the water and buried after an inquest had been held. No one was able to identify it. Dr. Tracy Wallace, who examined the body, found a fracture on the left side of the skull. He testified that the lick which caused the fracture could have produced death, and that a fall from the cliff could have caused the fracture. The father of Anna Isaacs learned of the discovery of the body in Cow creek and went to Irvine and had it disinterred. He identified the body as that of his daughter by a missing tooth and a distinguishing mark on another tooth. At the trial the Commonwealth proved that appellant, Garnie Walters, was with Anna Isaacs on the evening of November 7, 1939. Jeff Covey testified that he was in Irvine on November 7, 1939, which was election day, and was informed early in the evening that Sherman Cox was drunk and had on his person a large sum of money. Accompanied by his brother, Jerry Covey, who worked for Cox, he went to a restaurant and dance hall in Irvine known as the Black Cat and inquired for Cox, and, not finding him, then went to a nearby rooming house in Ravenna operated by Sarah Ann Hadden. He knocked on the door and inquired for Cox, who later came out and walked across the street to the Covey car. While Jeff Covey was waiting on the porch of the Hadden house for Cox, another car drove up and stopped. In it were appellant and Anna Isaacs. The Coveys tried to induce Cox to go home with them, but he refused and got in the car with appellant and the Isaacs girl. Before getting in the car Cox asked the girl for his money, and she said she didn't have it. He said something about shooting her and got in the car with appellant and drove off. The Coveys followed appellant's car and soon overtook it parked on the road near the corporate limits of Ravenna. Cox had a pint and a half of whisky, and the five occupants of the two cars drank it. The Coveys then turned around and drove back to Irvine. Jeff Covey testified that appellant's car

started off in the opposite direction. Leonard Barnes was in Irvine on the night of November 7, listening to the election returns, and about midnight took Dudley Fielder and B. Estes to their homes in his truck. Fielder and Estes lived at Wagers Station up the river above the mouth of Cow creek. After he crossed the bridge over Cow creek he saw a woman running down the road meeting him, and he turned the car sharply to the right to avoid striking her. It was dark and he saw her momentarily by the aid of the headlights on the truck but he could not see how she was dressed. About 100 yards beyond the point where he met the woman he saw a car parked on the side of the road headed toward Irvine, but saw no one in or around it. It was a bluish looking car similar to the car owned by appellant, but he was unable to identify it as appellant's car. On his return trip, after taking Fielder and Estes to their homes, he saw what he assumed was the same car parked on the other side of the Cow creek bridge near the home of James Fike. Fielder and Estes testified that they saw a woman running down the road toward the bridge over Cow creek and that a car was parked on the side of the road about 100 yards farther on towards Wagers Station. They were unable to say the car was appellant's, though they had seen his car. The point where they met the woman was about 100 yards from the end of the bridge. James Fike lives about 200 yards from the Cow creek bridge and on the opposite side from the point where the Barnes truck met the woman. Fike testified that shortly after midnight he "heard a woman hollering just above my house between there and the bridge." He heard her say: "Oh Lordy." A few minutes later he saw a car sitting in front of his house which he "took to be Garnie Walter's car." The foregoing is the substance of all the evidence for the Commonwealth tending to connect appellant with the crime, if a crime was committed.

Appellant testified that he hauled voters to the polls in Ravenna during the day and saw Anna Isaacs for the first time about 11 o'clock in the evening. His car was parked in front of the Victor Restaurant, and, as he started to drive to Irvine, Anna Isaacs walked up and asked for a ride. He had seen her on the streets a few times and knew her name, but had no recollection of having had any conversation with her. As he passed the Hadden rooming house Jerry Covey stopped him, and shortly thereafter Jeff Covey and Sherman Cox walk-

ed up to the car. Cox got in the car on the front seat with him and the Isaacs girl and he drove to the corporate limits of Ravenna. The Coveys followed in a car and there the crowd, including the Coveys, drank Cox's whisky. He then turned around and drove back to Ravenna, stopping the car in front of the Bush Restaurant. Anna Isaacs climbed out over Cox and went up the street in the direction of Kruse's Restaurant. He never saw her again. He went in the restaurant, ate a sandwich and drank a cup of coffee. When he returned to his car Cox had gone. He described his actions in Ravenna immediately thereafter and until he went to his home soon after midnight, and named a number of persons he was with who corroborated him. Sherman Cox testified that he went to the Black Cat Restaurant about 9 o'clock in the evening, and while there danced with Anna Isaacs. He had never seen her before that night. About 10:30 o'clock he took her to Sarah Ann Hadden's rooming house. She remained about 20 minutes and left, and he remained until called by Jeff Covey. He left appellant at the Bush Restaurant, walked back to the Hadden house where he had left his vest and tie, and then walked over into Irvine in search of a taxi to take him to his home, which was located about a mile and a half or two miles from the center of town. He met John Wilson, a policeman, and asked him where he could find a taxi. He located a taxi and arrived at his home about midnight. He told the policeman that he had lost $20 during the night. John Wilson, who was chief of police of Irvine at the time of the trial, testified that he was night patrolman on duty on the night of November 7, 1939. He saw Sherman Cox at the Black Cat on that night, and between 11:30 and 12 o'clock he saw him near the bank in Irvine, walking from the direction of Ravenna. Cox asked him if he could get a taxi, and the witness told him it was a little late but he thought they were running and he could get one on the corner. Earl Floyd, a taxi driver, testified that he took Cox to his home in a taxi about midnight. Sarah Ann Hadden testified that Sherman Cox, accompanied by Anna Isaacs, came to her house about 11 o'clock on the night of November 7, 1939, and rented a room. Anna Isaacs left in about 20 minutes, and shortly thereafter Jeff Covey appeared at the door and asked for Cox. Cox was asleep, and had to be called several times. Soon after Cox and Anna Isaacs appeared at her house Clayborn Henry arrived and rented

a room on the second floor directly across the hall from the room occupied by Cox and Anna Isaacs. Henry left the house soon after Cox left. Henry had rented a room in her house several times when Anna Isaacs was with him. There was proof that Henry was standing near the Black Cat Restaurant when Cox and the Isaacs girl left and went to the Hadden house. Sarah Ann Hadden also testified that Sherman Cox returned about 30 minutes after he left and got his vest and tie.

The only evidence produced by the Commonwealth to connect the appellant with the death of Anna Isaacs is proof that he was seen with her on the night she disappeared. No motive is shown. It is the Commonwealth's theory that appellant continued out the road after the Coveys left, drove over the mountain and down the valley to the Kentucky river, and down the river to the bridge over Cow creek, a distance of 19 or 20 miles, but there is no evidence to sustain this theory. Even if it be conceded that the proof was sufficient to show that the body found in the water was that of Anna Isaacs, yet the manner of her death is left to conjecture. She may have been struck on the head with a blunt instrument and her body placed in the water or she may have been thrown from the cliff or she may have fallen accidentally. Circumstantial evidence which is as consistent with the absence of a crime as with the perpetration of a crime is insufficient to prove the corpus delicti. Denham v. Commonwealth, 239 Ky. 771, 40 S. W. (2d) 384. Had the evidence been sufficient to authorize an inference that a homicide had been committed, there was a lack of evidence connecting appellant with the crime. Juries are not permitted to base verdicts of conviction on mere suspicion. In Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. (2d) 34, 41, the facts were somewhat similar to the facts in the present case, and there we said:

"The first question in this case is: Has a man been slain? We have direct evidence of death. Next we must look for clear and cogent evidence that the death is the result of some criminal agency. Then comes the question, who is the slain and who is the slayer; and the evidence must establish the identity of the one and the agency of the other, before there is anything to submit to a jury, and the evidence in this record does not do this."

See, also, Sloan v. Commonwealth, 258 Ky. 461, 80 S. W. (2d) 553; Hawk v. Commonwealth, 284 Ky. 217, 144 S. W. (2d) 496.

The attorney general frankly concedes that the evidence was insufficient to take the case to the jury and that appellant was entitled to a directed acquittal. Since we have concluded that the judgment must be reversed for the reason indicated, it is unnecessary to consider the other grounds assigned for reversal.

The judgment is reversed, with directions to grant appellant a new trial, and for further proceedings consistent herewith.